# IN THE COURT OF APPEALS OF IOWA

No. 16-1097
Filed September 28, 2016

**IN THE INTEREST OF L.H.,**
**Minor child,**

**H.G., Mother,**
     Appellant,

**L.H., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

A mother and father appeal the trial court's order terminating their respective rights to their minor child. **AFFIRMED ON BOTH APPEALS.**

Nicole L. Greenwood of Denefe, Gardner & Zingg, P.C., Ottumwa, for appellant mother.

Michael S. Fisher of Fisher Law Office, Oskaloosa, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Dustin D. Hite of Heslinga, Dixon & Hite, Oskaloosa, guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**MCDONALD, Judge.**

A mother and father appeal from the order terminating their respective rights in their child, L.H. (born 2013), pursuant to Iowa Code section 232.116(1)(h) (2015). The mother and father contend the State did not prove by clear and convincing evidence the statutory ground authorizing termination of their respective rights.

The standard of review and controlling framework are well-established and need not be repeated herein. *See In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016) (stating review is de novo and setting for the applicable "three-step analysis"); *In re A.M.*, 843 N.W.2d 100, 110–13 (Iowa 2014) (same). Iowa Code section 232.116(1)(h) requires the State prove by clear and convincing evidence the child could not be returned to the respective parent's care at the time of the termination hearing as provided in Iowa Code section 232.102. *See* Iowa Code § 232.116(1)(h)(4); *In re K.P.*, No. 15-2078, 2016 WL 1703081, at *1 (Iowa Ct. App. Apr. 27, 2016). To meet this burden, the State must show the child would suffer adjudicatory harm if returned to the parents' care. *See* Iowa § 232.102(5).

L.H. has a medical condition that causes her to be highly susceptible to a variety of severe and, if not properly monitored and treated, life-threatening ailments. She is currently undergoing testing, but her condition has not yet been diagnosed. The medical condition has manifested itself in a variety of ways since the time of her birth. For example, L.H. spent approximately one month in the hospital following her birth due to respiratory difficulty. In September 2014, L.H. was hospitalized and diagnosed with pneumonia, failure to thrive, and hypertonia. In addition to her various ailments, L.H. was significantly

developmentally delayed. She was unable to walk, crawl, or sit up well past the age when such development milestones should have been achieved. It was after this hospitalization that the Iowa Department of Human Services intervened and removed the child from the family.

The record reflects the mother is unable to meet the needs of this high-risk child. The mother has significant physical and mental health needs of her own. She has Type 1 Diabetes and struggles with meeting her own medical needs, including failing to use the proper dosage of insulin and using old syringes. The mother's lack of self-care resulted in her hospitalization on at least five occasions over the life of the case. The mother did not follow up on recommendations for an in-home nurse and is inconsistent with seeing her primary doctor about her diabetes. The mother was unemployed throughout the case, and she would be unable to provide for the child's basic necessities. An Iowa Department of Human Services worker testified there "appeared to be a significant lapse in [the mother's] ability to identify the needs of her child." While visitations with L.H. went well, the Family Safety, Risk, and Permanency (FSRP) co-case manager testified she had concerns about the mother's ability to care for L.H. long term and unsupervised, stating the mother lacked the stability and follow-through to take care of L.H. The mother would also disappear for weeks at a time during the pendency of this case.

The record also reflects the father was not able to meet the needs of the child. The father was in prison at the time L.H. was removed from the mother's care. The father commenced visitation with L.H. after his release. Like the mother, the father's visitation became sporadic over the life of the case. The

father underwent a psychological examination and was diagnosed with an intellectual disability, functioning at a third-grade comprehension level. The evaluation recommended that the child could be left in the father's care for only several hours at a time. The father's borderline mental functioning raise major concerns over his ability to take care of L.H. in both the short and long term. The FSRP case manager testified she did not believe any training, services, or classes could make any difference in his ability to care for L.H.

Other concerns demonstrate the parents' inability to provide for this child without exposing her to adjudicatory harm. Both the mother and father lacked consistent housing. The mother is a nomadic freeloader, having five residences during the pendency of this case. Each lacks employment history demonstrating any ability to provide for the child: the mother has none; and the father's is sporadic at best. The FSRP case manager testified she had concerns about both the mother and father using illegal substances. The mother failed to comply with substance-abuse testing, and she shaved her head to defeat a hair test. The father has a history of alcohol abuse, but he failed to follow through with needed treatment. On one occasion he was prevented from seeing L.H. during a scheduled visitation because he was intoxicated. There was a history of domestic violence between the father and mother. The mother obtained a no-contact order against the father, but the order was later dismissed. Although the mother and father now reside together, they never sought counseling to address their history of domestic violence.

Given the foregoing, on de novo review, we agree with the juvenile court's conclusion the State proved by clear and convincing evidence L.H. could not be

returned to the custody of the mother and father without being subject to adjudicatory harm and that termination of the parent's respective rights is in the best interests of the child. Both the mother and father had difficulty with caring for themselves and following the recommendations of IDHS. The mother struggles with caring for her own medical condition. *See In re M.L.O.*, 477 N.W.2d 393, 396 (Iowa 1991) (a mother's failure to deal with her own serious illness was "particularly ominous in the view of the delicate health of her two younger sons"); *In re A.S.*, No. 12-1534, 2012 WL 5356160, at *3 (Iowa Ct. App. Oct. 31, 2012) ("The mother's failure or refusal to address her physical health . . . issues places the children at imminent risk of suffering an adjudicatory harm under the mother's care."). The father has a history of alcohol abuse and failed to complete substance abuse counseling. *See In re G.L.A.D.H.*, No. 09-1770, 2010 WL 445903, at *3 (Iowa Ct. App. Feb. 10, 2010) (continued and relapsing substance abuse by a parent is factor demonstrating grounds for termination). The mother and father do not have consistent employment or housing. Psychological evaluations of both parents raise additional concerns regarding the ability of the mother and father to provide L.H. the care she needs. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (while a parent's mental disability alone is not grounds for termination, "where it affects the child's well-being, it can be a relevant consideration"). "Children cannot simply wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990).

**AFFIRMED ON BOTH APPEALS.**